IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Michael Anthony Pipkin, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cv338 (GBL/TCB) |
| | ) | |
| Dr. Kazlauskas and Nurse Jackson, | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION

This Matter comes before the Court on a Motion for Summary Judgment filed jointly by defendants Dr. Vytas Kazlauskas and Nurse Margaret Jackson. The lawsuit was initiated pursuant to 42 U.S.C. § 1983 by Michael Anthony Pipkin, acting pro se, who was a Virginia inmate when the complaint was filed.[1] Plaintiff alleged that he suffered cruel and unusual punishment in the form of deliberate indifference to his serious medical needs in violation of the Eighth Amendment at three Virginia Department of Corrections ("VDOC") institutions: Baskerville Correctional Center, Lunenburg Correctional Center, and Deep Meadow Correctional Center. By Order dated March 20, 2013, deficiencies in the initial complaint were explained, and plaintiff was provided an opportunity to particularize and amend his allegations in an amended complaint. Dkt. 3. After the amended complaint was received and reviewed, the claim predicated on events at Lunenburg Correctional Center was dismissed as time-barred, and the claim regarding plaintiff's medical care at Deep Meadow Correctional Center was dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A. Dkt. 9. Defendants Dr. Kazlauskas and

---

[1] During the course of the lawsuit, plaintiff filed a change of address to what appears to be a private residence in Norfolk, Virginia. Dkt. 8.

Nurse Jackson, who provided medical care to plaintiff at Baskerville Correctional Center ("BCC"), have submitted a memorandum of law and exhibits in support of their Motion for Summary Judgment, and provided plaintiff with notice and the opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. 14-16. Plaintiff has filed no reply. For the reasons which follow, defendants' Motion for Summary Judgment will be granted, and summary judgment will be entered in their favor.

## I. Background

The following material facts are uncontested. Plaintiff was transferred to BCC from Lunenburg Correctional Center on February 25, 2011. Def. Ex. 2. His Intrasystem Transfer Medical Review paperwork indicated that he was scheduled for a follow-up regarding rectal bleeding and low hemoglobin. Id. Dr. Kazlauskas reviewed plaintiff's medical intake on February 28, 2011, and noted that plaintiff had a history of chronic anemia and that an "acute GI bleed" had been worked up. Def. Ex. 1, Kazlauskas Aff. ¶3. The records indicated that both an upper and lower GI as well as a colonoscopy had been performed on February 16, 2011 and were normal. Id. Dr. Kazlauskas continued plaintiff's medications, including a stool softener, an iron supplement, folic acid, and Omeprazole for gastritis or ulcers. Id.

On March 7, 2011, Dr. Kazlauskas performed a physical examination of plaintiff. Id. ¶ 4. He noted mild epigastric tenderness and anemia of unknown origin, but also that plaintiff's epigastric pain had resolved and plaintiff wanted to work out. Id. The doctor ordered blood studies to check plaintiff's levels of iron, folic acid and vitamin B12, as well as a repeat CBC and a hemoglobin and hepatic panel.[2] Id. He also requested a copy of a camera endoscopy that had

---

[2] According to the website of the Mayo Clinic, a CBC is a complete blood count. It is defined as " a blood test used to evaluate your overall health and detect a wide range of disorders, including anemia, infection and leukemia."

been done before plaintiff was transferred to BCC, and noted a follow-up visit for plaintiff in one month. Id.

On March 21, 2011, Dr. Kazlauskas reviewed plaintiff's lab work. He noted that plaintiff's blood cell counts continued to indicate anemia and the iron level was still low, and he ordered a repeat CBC in six weeks. He also ordered Miralax three times a week for plaintiff's constipation issues. Id. ¶ 5.

A week later, on March 28, 2011, Dr. Kazlauskas reviewed the report from the camera endoscopy that had been performed on plaintiff. It showed gastritis and erosion in the duodenum, and he increased plaintiff's Omeprazole dosage as a result. Id. ¶ 6.

Dr. Kazlauskas examined plaintiff again on April 4, 2011. The doctor noted good bowel sounds, no tenderness in the abdomen, soft on palpation, no mass, and no distention. A rectal examination revealed no impaction, dark stool, and a normal prostate. Id. ¶ 7. Plaintiff complained of increased gas from his medications, and Dr. Kazlauskas prescribed a Ducolax suppository for two weeks, magnesium citrate orally, and a follow-up examination in six weeks. Id. In addition, Dr. Kazlauskas requested an outside consultation for plaintiff with a gastroenterologist at Medical College of Virginia ("MCV"). The request was approved on April 18, 2011 and the appointment was made for June. Id.

On May 2, 2011, Dr. Kazlauskas again examined plaintiff, who complained of increasing abdominal pain and stated that he had not had a bowel movement in two weeks. Id. ¶ 9. Upon examining plaintiff, Dr. Kazlauskas noted plaintiff's discomfort, and that on palpation he had guarding and tenderness on his left upper to lower abdomen, with no distention. Id. Dr. Kazlauskas had plaintiff transported in a BCC vehicle to the MCV emergency room for evaluation. Id. On May 5, 2011, he authorized prescriptions for plaintiff that had been received

from MCV. Id. ¶ 10. And on May 9, 2011, Dr. Kazlauskas reviewed a report from the MCV emergency room, which indicated that plaintiff would be referred to the oncology and hematology departments for treatment. Dr. Kazlauskas indicated that he should be called to renew plaintiff's pain medication when it was due to run out. Id. ¶ 11.

On May 14, 2011, Dr. Kazlauskas renewed plaintiff's prescription for Vicodin for pain. Id. ¶ 12. He examined plaintiff on May 16, 2011 and reviewed the findings from MCV with him. Id. ¶ 15. He also requested a 30-day approval for Vicodin. Id.

On May 17, 2011, plaintiff had an appointment with the oncology department at MCV. Id. ¶ 14. Dr. Kazlauskas reviewed the visit with plaintiff. Id. It had been recommended that plaintiff's pain medication be changed from Vicodin to Percoset, but MCV had not sent a prescription for Percoset. Id. Dr. Kazlauskas tried to get Percoset for plaintiff both from Diamond, VDOC's pharmaceutical contractor, and also from a local pharmacy, but he was unable to fill the prescription from either source. Id. On May 24, 2011, he increased plaintiff's dosage of Vicodin. Id. Plaintiff was transferred to Deep Meadow Correctional Center three days later. Def. Ex. 4, Jackson Aff. ¶ 5.

The other defendant in the lawsuit, Nurse Jackson. was the administrator of the BCC medical department during the period relevant to this lawsuit. Def. Ex. 4, Jackson Aff. ¶ 1. In that capacity she was responsible for monthly activity reports, scheduling, and supervision. Her duties did not include inmate medical care unless the department was short of nurses. Id. In her role as administrator, Nurse Jackson entered plaintiff's vital signs into his chart on May 16, 2011, noted that he had returned from his MCV oncology appointment on May 18, and noted on May 19 that he was scheduled for an appointment with MCV's hematology department on May 25. Id. ¶ 3. On May 11, 2011, Nurse Jackson submitted a Medical Transfer Request Form to VDOC

on plaintiff's behalf, seeking his transfer from BCC to a facility with 24-hour nursing care and situated closer to MCV, where he was scheduled to undergo surgery and follow-up care. Id. ¶ 4. As a result, plaintiff was transferred from BCC to Deep Meadow Correctional Center on May 27, 2011. Id. ¶ 5. Making the foregoing entries on plaintiff's medical chart and requesting his transfer were Nurse Jackson's only involvement with plaintiff's medical care at BCC. Id. ¶ 6.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

At this juncture, it is apparent that both defendants are entitled to summary judgment. As to plaintiff's claim against Dr. Kazlauskas, to establish an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To do so, a plaintiff must establish two distinct elements. First, he must show the existence of a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must demonstrate deliberate indifference to that serious medical need. Under this second prong, a showing of negligence or even malpractice is not enough to establish an Eighth Amendment violation; instead, the plaintiff must show that defendant displayed deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). That is, the plaintiff must show that the defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Importantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Here, it is uncontroverted that plaintiff's condition proved to be cancer, which plainly is sufficiently serious to satisfy the first element of an actionable Eighth

Amendment claim. Nonetheless, plaintiff's claim against Dr. Kazlauskas fails on the second element of the Eighth Amendment analysis, because the evidence belies any suggestion that Dr. Kazlauskas was deliberately indifferent to plaintiff's needs. The chronology outlined above demonstrates that plaintiff was seen on a regular basis by Dr. Kazlauskas during the three months he was incarcerated at BCC. Dr. Kazlauskas reviewed plaintiff's medical history upon his arrival at BCC, requested and reviewed the results of tests performed prior to plaintiff's transfer to BCC, ordered and reviewed the results of blood tests, prescribed numerous medications, and requested that plaintiff receive a consultation with a gastroenterologist. In short, far from being deliberately indifferent to plaintiff's medical condition, Dr. Kazlauskas did not ignore plaintiff's symptoms but rather ordered and reviewed the results of appropriate tests, and followed up with plaintiff regularly during his incarceration at BCC. When plaintiff's symptoms worsened, Dr. Kazlauskas ordered that he be transported to MCV for evaluation, and ensured that plaintiff remained on pain medication thereafter. Since the uncontroverted evidence demonstrates that Dr. Kazlauskas never exhibited deliberate indifference to plaintiff's serious medical needs, summary judgment will be entered in his favor.

Plaintiff's claim against Nurse Jackson fares no better. The evidence establishes that Nurse Jackson was not directly responsible for providing medical care to inmates at BCC, and instead acted as an administrator The sole actions she took on plaintiff's behalf were to make three notations in his medical chart, and to request his transfer to an institution where he could receive more intensive nursing care after his cancer was diagnosed. Under these circumstances, where Nurse Jackson had no duty to provide medical care to plaintiff and was not directly involved in the medical care he received, she can have no liability to him based on the quality of that care. See generally, Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996)( "[A] medical

treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct."), citing Miltier, 896 F.2d 848; accord, Boblett v. Angelone, 957 F.Supp. 808, 813 (W.D. Va. 1997).  Accordingly, Nurse Jackson is entitled to the summary judgment she seeks.

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted, and summary judgment will be entered in their favor.  An appropriate Order shall issue.

Entered this ____ day of _____ 2014.

Alexandria, Virginia

_____/s/_____
Gerald Bruce Lee
United States District Judge